United States v. Miranda-Sotolongo My name is Akshay Matthew and I, along with co-counsel Eric Wang, will represent the appellant Mr. Miranda-Sotolongo. This case is about reasonable suspicion. When Officer Johnston pulled over Mr. Miranda-Sotolongo, he did so without any individualized suspicion to justify a stop. So let me ask you a beginning question. Suppose I'm driving down Interstate 55 and a police officer and his partner happen to be right behind me. And the partner is bored and doesn't have anything to do, so the partner on the computer that's in the squad car runs my plates. And they come back as, you know, Illinois plates and no red flags or anything. So we all just drive along and nothing happens. Have my Fourth Amendment rights been violated? Yes, there is a privacy interest. And in Kraus, the Supreme Court did say that random spot checks of registration With a, connected with a stop. Yeah, connected with a stop. See, that's where Surely not just checking public information displayed on your car. That's correct, yeah. So here's my issue with your case. I'll be very quick because we have only ten minutes to decide. If it's okay for the police officer, for a good reason, no reason, or a bad reason, And let's assume for the sake of argument it was a bad reason in this case, Because he didn't know Indiana law as well as he should have. But if it's okay simply to run the plates in the car without a stop, If he, at that moment, based only on his misapprehension of Indiana law, With no computer check, had stopped the car, I think you'd have a different case. But he runs the plates, because he thinks it's weird, So he runs the plates, but I'm saying his reason probably doesn't matter. And they come back not registered. And then he calls the dispatcher and gets that person to check. So I'm going to suggest to you, That tells him that maybe there's a one in six chance That this is just because it's Labor Day weekend, And nobody's had a chance to put the new car, You know, maybe it's a new car. But there is, it strikes me, a reasonable enough suspicion To pull the car over to investigate further. And the minute he pulls the car over, Mr. Miranda Sotolongo says, I'm driving on a suspended license. So he creates his own problems at that point. So I'm trying to focus on this very beginning point. And I can't really see where the error about Indiana law Plays much of a role. That plays a role because that is what led to The searching of the registration. It's what leads him to check the computer And to ask the dispatcher. And if that information had come back, Suppose instead of Labor Day weekend, He bought the car on August the 15th. So it still has the temporary tag on it. Presumably the dispatcher would have come back, Or somebody at the computer would have said, Yeah, this is a recently purchased car. That's a valid Indiana temporary tag. No problem. As far as we know, everybody would have driven on And nothing would have happened. What's different in this case is that A temporary license plate Doesn't have the same implication as a permanent License plate, where there's an expectation that It may not be in a computer system. Well, you all are trying to rely, If I understand this correctly, on, in essence, Footnote four of our decision in mounts. Yes. That is the idea that if what I was looking for here Was some indication of evidence to the effect that Computer records regarding temporary plates Are not up to date or reliable. And I would note, with some interest, At least I'd be interested in your reaction to it, The Tenth Circuit had a decision on this point A couple of years ago that talked about mounts, U.S. against Esquivel-Rios 725F3-1231, Where they actually, there were indications that The dispatcher told the officer, Well, a lot of times these don't come up. We don't have anything like that here. We don't have any evidence that I see, But perhaps I missed something. In the record, I believe you're correct, Honor, That there isn't any evidence on how often this happens, But just based on the circumstances of this being A long holiday weekend, It's understandable that many states Wouldn't have that updated. That sounds like just total speculation to me, frankly. And I don't see why the police officer isn't entitled to say, Look, I checked twice. I'm going to look into this further. And I'm frankly a little concerned that if we were to agree with you That a check, in this case two checks, On temporary plates with negative results, If that's not enough to support an investigative stop, It seems like putting a fake temporary plate on your car Would be the best way to avoid police scrutiny. This court did hold in U.S. v. Uribe, I'm not sure how to pronounce it, That a color discrepancy between the computer system Would not be a suspicion. I'm aware of that. And that would have the same issue. If someone stole a car painted a different color, Wouldn't that be... And for reasons that are a little hard to fathom, The government didn't put on much of a case in Uribe, At least the way I read the opinion. But we've got mounts. We've got the invitation for evidence along these lines, And we don't have any evidence. It would still be... It would give the police discretionary authority To basically stop a number of people With registrations that haven't been input In the computer record. I don't know how often that would... That is the case, though. Mr. Matthews, you seem to suggest On page 8 of your response That because the genesis of the... Computer check regarding registration Was a mistake of law, That somehow the whole sequence... The whole sequence is therefore tainted. Mm-hmm. Do you believe that's state of the law? I mean, isn't the real genesis for the... The real basis for the stop To the computer check and then the check with the dispatcher As no registration for that vehicle? Well, the... The fact that the impetus may have been something, And now, of course, now we have, what's it, Heinemann v. North Carolina. But the impetus of that, you seem to be Insisting that there's some sort of kind of Preparatory standard for something that would lead up to Making the call to the computer To determine registration. Is that what you're telling us? That is part of it. There's... Because he didn't have the suspicion To check the computer records, It is... It's, in essence, a random check, Because he didn't have... That was Judge Wood's first question, right? Okay. Can I ask you about the supervised release issue here? Yeah. I know the parties have agreed on this, But from your perspective, counsel, Could the district judge on remand respond to this With a longer prison sentence? And the rationale might go something like this. Since I'm not allowed, the judge might say, To impose the conditions that I thought were appropriate the first time, I'm not going to have the same Degree of court control and discretion That I thought were appropriate During the period of supervised release, So I think I'm going to compensate for that lack of control By a longer prison sentence. Would that be a permissible response? We believe so. We are asking for a full re-sentence, And in the context... You don't probably want to say The judge could give him more time in prison, do you? That would be up to the district court judge to decide. I tend to agree with you, but I have... I'm thinking people need to be careful what they ask for With respect to some of these supervised release remands. Well, if you want to save a bit of time for rebuttal, That would be good. All right, Mr. Baum. I think we've just slipped into afternoon. Good afternoon. May it please the court, Jason Baum on behalf of the United States Council. Judge Hamilton, I'd like to address a question. The only evidence I'm aware of in the record About the number... Of the possibility that the car isn't registered Is the officer did testify He knew when he pulled the car over There were two options, really. It was either stolen or didn't have a proper registration Or, in fact, it was a recent purchase. So there is his testimony that at least in some cases I think there is... He had experienced at least that that happens. The quantity and how often that happens And how it relates to Labor Day, There's no evidence of that. So what I understood the officer, And if I could get inside his head, He's gotten the two negative returns From the computer check and the dispatcher check Prompted by his failure to know What Indiana law allows or has in mind. But it's an investigatory stop. And if Mr. Miranda Sotolongo Had not immediately said, I'm driving on a suspended license, Maybe he just would have presented The purchase papers for this car. And the officer would have said, Oh, I see you just bought it two days ago. I understand, you know, all's well. I think that's exactly right. And I think Judge McDade said that In his decision that once we got to the hypothetical Of what would have happened, The officer probably may have very well let him go. But when Mr. Sotolongo says right out of the gate, I have a suspended license, Well, that changes the scenario substantially At that point. So what do we make of this? I mean, in the real world, This stop would not have happened If the officer had known what... And this is not a brand new Indiana law. The Indiana Supreme Court had spoken to it in 2005. And it's a little troublesome to think... Because this takes us to Hyen, in a sense. And Hyen talks about a mistake of law that's... And the Chief Justice says this over and over again. It's a reasonable mistake of law. There was the one North Carolina statute about brake lights. There was another North Carolina statute About having all your lights working. And the court says, In the face of these not-perfectly-knit-together laws, A reasonable officer might not know. I don't see how any reasonable officer here Could have any doubt that this black-and-white, You know, temporary Indiana license Properly mounted on the back of the car Was completely fine. I think two responses. One, if that were the case, If that was the only reason for the stop, This would be a much different case right now. I do think, and that's why we cited the dissenting opinion, I think it's Justice Rucker from the Indiana Supreme Court Who said, There are a number of Hoosiers who drive this way, And the question of reasonableness there, I think, Is a much, much closer one. But the officer would have been trained, If he was trained at all, On the actual state of law of Indiana, And not on what dissenting justices are musing about. Yeah, I'm not sure what an Illinois state trooper Is trained on with respect to Indiana law. There are a lot of Indiana cars on the road. There sure are. Going across I-64. What would you say the standard should be Before an officer can call in and make a registration check? I don't think there is a standard. I think that's why there's registration on vehicles, Is to allow officers to do that. There are cars driving around Chicago now With pink mustaches on the front, And if that directs the attention of the officer to run the plate, I think that's perfectly... Could the officer just willy-nilly have decided, I'm going to run a check on that plate, Regardless of how it appeared to be legal or illegal? I think he could. I think if we get to an area where an improper reason Or a protected class is, If there's evidence that that's being... Assuming that's not the case. If that's not the case, I don't think there is a... Then it really doesn't matter whether or not he made a mistake As the law or fact, Or whether Heinen is controlling or not. Not in this case, because he ran the registration. If you assume the fact he didn't and then he pulls it over, Then I think, as Judge Wood asked, We're in a much different, much closer case. Unless there are any further questions, We will rely on our briefs. All right, that sounds fine. So anything further? This is going to be Mr. Wang. May it please the Court. My name is Eric Wang. Two points on rebuttal, Your Honors. First, I'd like to highlight what Judge Arrow was saying About the genesis of the computer sequence. We've been focusing a lot on the computer verification That occurred after the initial reasonable suspicion. But the issue is that the officer, Johnson, Needs to have some reasonable suspicion Prior to conducting that car verification. What authority do you have for that? I'm not familiar with any case that says Before an officer runs a check on his computer That might be nothing but a check on his computer. He needs to have in his mind Some kind of reasonable suspicion. I think this is a good reading of Delaware v. Prowse, Which states that if an officer... There's a stop there, as Judge Hamilton pointed out. There is a stop after, but prior to this, There should be some reason for Officer Johnson To initiate that stop. Isn't it hard to maintain an argument That there's a reasonable expectation of privacy On the information on a license plate When the very nature of the plate Is to publish, once you go through certain steps, Who owns the car and who may be driving it? Exactly. I think that's completely right, Your Honor. Isn't that the antithesis of privacy? Well, I think the main point is that... What about all those red light cameras That take pictures of your license plate As you're taking a right on red When you shouldn't be doing it? With respect to the red light, I think that focuses more on checking for speeding. But again, it's a public piece of information. I'm really not being frivolous. The license plate is out there in the public domain. The camera can take a picture of it. The police officer can look at it. And they run the information. A license plate is definitely public, But I think what we're trying to emphasize here Is that the officer needs to point to some facts To run that car registration, to run the plates. Otherwise, the officer could run plates On anyone driving on any interstate. Do you have the authority for that? Not directly beyond the existing Fourth Amendment jurisprudence. Really, to analogize further to High End, In that case, the asserted violation Was of a North Carolina statute That hadn't been construed before. And the court focused a lot on An officer running into a situation In which they encounter a statute That's genuinely ambiguous, That they don't necessarily know how to resolve. And I think the big distinction in this case Is that under any law, it's very clear That temporary license plates Should be placed on the back of a car. So there's no genuine ambiguity here. And under the objective reasonable standard That the Supreme Court has emphasized, It's not objectively reasonable For Officer Johnson to state That the license plate looks odd, That it's on a back window, And that it's on a car printout, When that's clearly consistent With what Indiana law prescribes. And that's been a subtle case of affairs For several years now. I wonder how it would work, for example, If somebody is driving. In some places, it can be considered suspicious To be driving precisely at the speed limit. Right? That's correct. Scrupulously obeying every law About lane changes, signals, etc. Now we know that's not enough to justify a stop, But why isn't it enough to justify Just an inquiry that doesn't impose Any restrictions on liberty Or intrude on privacy? With respect to the... I think, strictly speaking, The court has to look at the actual law, What the actual statute prescribes. And so I think maybe what Your Honor is hinting at Is the issue of the fact that maybe Indiana drivers Do place their registration on the back window. But, you know, the duty of the court Is to assess the objective reasonable standard Based on what the statute actually says. And what the statute says is that it should be placed Where most license plates are placed. Second, with respect to the Thompson issue, Just to respond to your point earlier, Your Honor, It may be possible a defendant could get a higher sentence On full resentencing, But in this case, we think that's quite unlikely For that to happen. All right. Well, thank you very much. Thanks to all counsel. We'll take the case under advisement. Court will be in recess.